HURON  HUYETT,  DANIEL  HUYETT · and  DANIEL
STARTZMAN *vs.* ARBENIA SLICK, JACOB MARKER,
Sheriff, and WM. M. TICE.

*Bill for Injunction to restrain Action on recognizance in Bastardy—Jurisdiction Laches as an objection to the interposition of a Court of Equity.*

A recognizance in bastardy was entered into on the 12th of August, 1872, and it was filed with the clerk of the Circuit Court for the County, on the 28th of October, 1872, to be recorded among the proceedings of the Court. Upon application of the mother an order was issued on the 7th of May, 1873, requiring the putative father of the illegitimate child, and his sureties to pay to the mother the sum of $30, for the support of the child for one year; and upon their failure to make such payment a *scire facias* was issued on the recognizance on the 11th of July, 1873, as directed by the *Code, Art.* 13, *sec.* 8. To the *scire facias* the parties proceeded against, appeared by attorney, but interposed no defence, and on the 6th of December, 1873, a *fiat* was entered for the $30 and costs. On this judgment a *fieri facias* was issued on the 18th of May, 1874; and on the 4th of June, 1874, a bill was filed by the defendants in the judgment asking for an injunction to restrain the execution, upon the ground, that the pretended recognizance was not a true record, but was false and fraudulent, and was not in point of fact entered into by them, and that they were ignorant of its nature until after the same had been returned to the clerk of the Court and become a part of the records thereof. HELD:

1st. That the jurisdiction of the Circuit Courts to take cognizance of cases of bastardy under the *Code, Art.* 13, depends upon the defendant's compliance with the law in giving the recognizance to appear at the next Circuit Court.

2nd. That it was his duty if he sought to have the judgment of the justice reviewed, to have given the proper recognizance; and until such recognizance was given the judgment was in no manner stayed, and could be enforced against the defendant for the indemnity to the County.

3rd. That if by mistake the justice took the wrong recognizance or filled up the blanks with an acknowledgment different from that actually made and

intended by the parties, it was the duty of the putative father at once upon discovering the mistake to take the proper and necessary proceedings to correct the mistake and have the proper recognizance substituted so that the case might be tried without delay.

4th. That if the proper remedy for the alleged mistake, be in a Court of Fquity, (as to which no decision is given,) the application should have been made without any unnecessary delay.

5th. That such diligence as the nature of the case demanded had not been observed and the delay had been too great to call into activity the remedial powers of a Court of Equity.

APPEAL from the Circuit Court for Washington County, in Equity.

The bill in this case was filed by the appellants to restrain proceedings under a *fieri facias* issued to enforce a judgment obtained against them in the Circuit Court for Washington County. The judgment complained of was rendered upon a recognizance given by the appellants to indemnify the county against all charges for the maintenance of an illegitimate child, of which one of the parties to the recognizance was alleged to be the father. The appellants alleged that they never intended to enter into any such recognizance, but were recognized as they supposed and intended, for the appearance of the putative father of the child at the next term of the Circuit Court to contest the charge against him.

The Court below (MOTTER, J.,) upon the motion to dissolve, passed an order dissolving the injunction and dismissing the bill. From this order the present appeal is taken. The facts are sufficiently stated in the opinion of this Court.

The cause was submitted to BARTOL, C. J., STEWART, MILLER and ALVEY, J.

*H. H. Keedy,* for the appellants.

The question is, assuming there was mistake, accident or fraud in the recognizance returned, had the appellants

a remedy at law? A plea of *nul tiel record* would have been of no avail. The record existed as recited in the *scire facias*. We admit that there is such a record, but allege, that it is not true, that it was made by accident, fraud or mistake. Admitting then, that there is such a record, the *scire facias* requires the appellants to show cause why the appellee should not have the advantage of the same. A plea, which sets up matter antecedent to the recognizance would be ruled bad upon demurrer. No plea is allowed which would affect the sanctity or validity of the record, and parties are never permitted to question or to aver against its verity. This principle is recognized by the highest authority. 1 *Chitty on Pleading*, 570, (12*th Am. Ed.* ;) *King vs. Carlile*, 2 *Barn. & Adol.*, 362 ; *Cardesa vs. Humes*, 5 *Sargt. & Rawle*, 65 ; *Green vs. Ovington*, 16 *John.*, 55 ; *Kemp vs. Cook*, 6 *Md.*, 305 ; *Moore vs. Garretson*, 6 *Md.*, 444 ; 2 *Saunders Pl. & Ev.*, 750 ; 2 *Tidds Pr.* (4 *Am. Ed.*,) 1128 ; *Miller vs. Fiery*, 12 *Md.*, 227.

There being no remedy at law, equity will grant relief.

The appellants have evoked the interposition of a Court of Equity for relief. Huron Huyett denies that he is the father of the child in question. He protests that he is innocent—the law presumes him innocent. It is also clear that these appellants did not enter into the recognizance, which is attempted to be enforced. "Equity will grant relief where by mistake, accident or fraud a judgment has been entered for an amount or on terms not intended." "In a great variety of cases, Courts of law cannot afford any redress to the party sued, although it is most manifest, that he has in conscience and justice, but not in law, a perfect defence. He may be deprived of his right by fraud or accident or mistake." 2 *Chitty's Eq. Juris.*, sec. 876, 877 ; *Katz vs. Moore*, 13 *Md.*, 566 ; *Kent vs. Ricards*, 3 *Md. Ch. Dec.*, 392.

" Nor is the injunction confined to any one point of the proceedings at law, but it may be granted at any stage of the suit. Thus an injunction is sometimes granted to stay trial ; sometimes after verdict to stay judgment; sometimes after judgment to stay execution ; and sometimes after execution to stay the money in the hands of the sheriff if it be a case of *fieri facias.*" 2 *Story's Eq. Juris.*, sec. 886; *Eden on Injunction, chap.* 2, *p.* 3 ; *Grant vs. Lathrop,* 3 *Foster,* 67 ; *Kenyon vs. Clarke,* 2 *Rh. Is.*, 67 ; 1 *Madd. Ch. Pr.*, 109 *and* 110.

*Z. S. Clagett,* for the appellee Arbenia Slick.

The complainants have a complete, full and adequate remedy at law. The recognizance is the foundation of the action. Upon issuing a *scire facias,* the complainants could show by the Justice of the Peace, who issued the recognizance, that it was not in fact issued. It is not like reviving a judgment in the Circuit Court by *sci. fa.*, in that case a judgment precedes the *sci. fa.* This is a recognizance taken by a Justice of the Peace, and is not a judgment until a *fiat* is had upon the *scire facias,* and the correctness of the recognizance is inquirable into.

If a recognizance, different from that intended, was entered into, it was fraudulent, and fraud is equally a defence in law and in equity. 2 *Story's Eq.*, sec. 1575.

The bill is for a discovery, and it is too late after judgment at law for complainants to apply to a Court of Equity for relief. They should have filed their bill immediately upon the return of the recognizance. They knew of the mistake—if it existed—at the November Term of the Circuit Court 1872, yet the injunction was not filed until June 4th, 1874, long after the judgment, and still longer after *scire facias* was issued upon the recognizance. *Dilly and Heckrote vs. Barnard,* 8 *G. & J.*, 171 *and* 189 ; *Lanning vs. Eddy,* 1 *John. Ch. Rep.*, 51.

It must appear that the defendant was ignorant, at the time of the trial, of the fact which renders the verdict at

law contrary to equity. The parties cannot be placed in *statu quo*, and the State is damnified by the negligence of complainants. 1 *Story's Eq.*, 138, *d. and e.*

A party coming into a Court of equity is bound to show that his title to relief is unmixed with misconduct or negligence of himself or his agents. 1 *Story's Eq.*, sec. 105.

If relief is granted, what will be the decree? Will the Court decree a specific performance of the obligation into which complainants admit they entered? If the power has been defectively executed, it is a statutory power, and is not relievable in equity on the grounds of mistake. *Smith vs. Bowes & Wise*, 38 *Md.*, 463.

To perpetuate this injunction, therefore, would be to relieve the complainants of the recognizance into which they admit they entered, as well as the recognizance which they allege was erroneously returned.

ALVEY, J., delivered the opinion of the Court.

Without deciding several of the questions discussed in the opinion of the learned judge who determined this case in the Court below, we think the decree appealed from should be affirmed.

The recognizance complained of was entered into by the complainants on the 12th of August, 1872, and it was filed with the clerk of the Circuit Court for the County on the 28th of October, 1872, to be recorded among the proceedings of the Court. Upon application of the mother an order was issued on the 7th of May, 1873, requiring the putative father of the illegitimate child, and his sureties, to pay to the mother the sum of thirty dollars, for the support of the child for one year; and, upon their failure to make such payment a *scire facias* was issued on the recognizance, on the 11th of July, 1873, as directed by the Code, Art. 13, sec. 8. To the *scire facias* the complainants appeared by attorney, but interposed no defence, and on the 6th of December, 1873, a *fiat* was entered for the thirty dol-

lars and costs. On this judgment a *fieri facias* was issued on the 18th of May, 1874, and to restrain the execution of which process the present bill was filed on the 4th of June, 1874;—nearly two years after the recognizance was taken, and more than a year after proceedings were commenced to enforce it.

It is not alleged or pretended that the complainants, or either of them, remained ignorant of the nature of the recognizance after it was filed for record ; but it is alleged in their bill that they were ignorant of its nature, "until after the same had been returned as aforesaid to the clerk of the said Court, and the same had become a part of the records thereof, and that they *then* became for the first time aware of the mistake, wrong and fraud upon them." The recognizance was filed for record, as before stated, on the 28th of October, 1872, and independent of all admission or proof upon the subject, the law would impute knowledge from that time.

Upon the discovery of the father, by the oath of the mother of the child, it was the duty of the justice of the peace to enter judgment against the father, that he give security in the sum of eighty dollars to indemnify the County from all charges that might arise for the maintenance of such child ; and if the alleged father felt himself aggrieved by the judgment of the justice, upon making such grievance known to the justice, it became the duty of the latter to require the putative father to enter into recognizance for his appearance at the next Circuit Court for the County, upon which that Court would have been required to take cognizance thereof, and such proceedings would have been thereupon had as in other criminal cases. Code, Art. 13, secs. 2 and 5. This latter proceeding is the mode prescribed by which the judgment of the justice may be reviewed in the Circuit Court, and it is had at the instance and for the benefit of the putative father alone ; and the jurisdiction of the Circuit

Court to take cognizance of the case, depends upon the defendant's compliance with the law in giving the recognizance to appear at the next Circuit Court. *Root vs. The State,* 10 *G. & J.,* 374 ; *Cushwa vs. The State,* 20 *Md.,* 277. It was his duty, therefore, if he felt aggrieved, and sought to have the judgment reviewed, to have given the proper recognizance; and until such recognizance was given, the judgment of the justice was in no manner stayed, and could be enforced against the defendant for the indemnity to the County. If by mistake the justice took the wrong recognizance, or filled up the blanks with an acknowledgment different from that actually made and intended by the parties, it was the duty of the putative father at once, upon discovering the mistake, to take the proper and necessary proceeding to correct the mistake, and to have the proper recognizance substituted, that the case might be tried without delay. This he failed to do, but allowed more than a year and a half to elapse, after becoming aware of the nature of the recognizance, before taking any steps against it, and then without any proffer to furnish the proper recognizance, whereupon further proceeding could be had. . The present application is in effect, not only to stay all proceedings on the judgment of the Circuit Court, but to vacate and render nugatory the recognizance upon which that judgment is founded, and thus relieve the party of the proceedings in the Circuit Court, and, possibly, by the occurrence of events, from the judgment of the justice also. To do this would be manifestly unjust both to the County and to the mother of the illegitimate child. If the proper remedy for the alleged mistake be in a Court of equity, (a question we do not decide,) the application should have been made with reasonable diligence, and without any unnecessary delay, in view of the nature and circumstances of the case. Such diligence as the nature of the case demanded has not been observed, and the delay has been too great to call into

activity the remedial powers of a Court of equity, under the circumstances disclosed.

But, apart from the question of laches, there would seem to be a want of equity in the case. The putative father was himself examined as a witness on his own behalf, and with the fullest opportunity for stating on his oath whether he was really the father of the child or not, he omitted to do so, but stated simply that he had denied the paternity of the child before the justice. The mother proves the paternity of the child, and proves moreover that the father, the complainant, at one time offered to pay the doctor's bill for attendance during her confinement, and at another time offered to pay $125 by way of compromise, to keep the matter out of Court; and the supposed father admits that he had offered the mother money, to settle the matter, without designating the amount. So, in fact, whatever may have been the mistake of the justice as to the form and nature of the recognizance, no real injustice appears to have been done.

*Decree affirmed.*

(Decided 17th November, 1875.)